**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**DAVID ECKERT,**

        **Plaintiff,**

**v.**                                        **CV**

**THE CITY OF DEMING,
DEMING POLICE OFFICERS BOBBY OROSCO, ROBERT CHAVEZ,
and OFFICER HERNANDEZ;
HILDAGO COUNTY; HILDAGO COUNTY SHERIFF OFFICERS
DAVID ARREDONDO, ROBERT RODRIGUEZ,
and PATRICK GREEN;
DEPUTY DISTRICT ATTORNEY DANIEL DOUGHERTY,
GILA REGIONAL MEDICAL CENTER,
ROBERT WILCOX, M.D.,
and, OKAY H. ODOCHA, M.D.**

        **Defendants.**

## COMPLAINT TO RECOVER DAMAGES FOR DEPRIVATION OF CIVIL RIGHTS AND PERSONAL INJURY

## JURISDICTION AND VENUE

Plaintiff brings this complaint under 42 U.S.C. Section 1983, the New Mexico Tort Claims Act, the New Mexico Medical Malpractice Act, and the New Mexico Unfair Practices Act for damages resulting from the Deprivation of Civil Rights, Medical Malpractice and Unfair Practices inflicted upon Plaintiff by Defendants.  The court has jurisdiction of this action (28 U.S.C. Sec. 1343) and of the parties.  Venue is proper in this judicial district as the incident complained of occurred in this district.  Plaintiff alleges as follows:

## PARTIES

1.      Plaintiff David Eckert is an individual who is a resident of Lordsburg, Hidalgo County, State of New Mexico.

2.      Defendant City of Deming is a municipality in the State of New Mexico.

3.      Defendant Chavez is a law enforcement officer for the City of Deming.   Defendant was acting under color of state law and in the course and scope of his employment as a law enforcement officer with the City of Deming at all times material.

4.      Defendant Hernandez is a law enforcement officer for the City of Deming.   Defendant was acting under color of state law and in the course and scope of his employment as a law enforcement officer with the City of Deming at all times material.

5.      Defendant Orosco is a law enforcement officer for the City of Deming Police Department.   Defendant was acting under color of state law and in the course and scope of his employment as a law enforcement officer with the City of Deming at all times material.

6.      Defendant Hidalgo County is a county in the State of New Mexico.

7.      Defendant Arredondo is a law enforcement officer for the Hidalgo County Sheriff's Department.   Defendant was acting under color of state law and in the course and scope of his employment as a law enforcement officer with the Hidalgo County Sheriff's Department at all times material.

8.      Defendant Rodriquez is a law enforcement officer for the Hidalgo County Sheriff's Department.   Defendant was acting under color of state law and in the course and scope of his employment as a law enforcement officer with the Hidalgo County Sheriff's Department at all times material.

9.      Defendant Green is a law enforcement officer for the Hidalgo County Sheriff's Department.   Defendant was acting under color of state law and in the course and scope of his employment as a law enforcement officer with the Hidalgo County Sheriff's Department at all times material.

10.      Defendant Dougherty was a Deputy District Attorney for the Sixth Judicial District Attorney's Office.   Defendant was acting under color of state law and in the course and scope of his employment as a Deputy District Attorney at all times material.

11.      Defendant Gila Medical Center is a hospital in Silver City, New Mexico.  This Defendant, through its agents, acted at the request of law enforcement to aid law enforcement and preformed medical procedures that had no medical purpose.

12.      Defendant Wilcox is a physician employed by Defendant Gila Medical Center or was acting as Defendant Gila Medical Center's agent.  Defendant was acting under color of state law at the indicated times. This Defendant acted at the request of law enforcement to aid law enforcement and performed medical procedures that had no medical purpose.

13.      Defendant Odocha is a physician employed by Defendant Gila Medical Center or was acting as Defendant Gila Medical Center's agent at all times material.  Defendant was acting under color of state law at the indicated times. This Defendant acted at the request of law enforcement to aid law enforcement and performed medical procedures that had no medical purpose.

## FACTUAL BACKGROUND

## September 6, 2012 Search:

14.      On or about September 6, 2012 at approximately 6:26 pm, Plaintiff's vehicle was stopped by Defendant Robert Rodriquez for a cracked windshield.

15.      Defendant Rodriquez ordered Plaintiff Eckert to exit his vehicle and stand by the patrol vehicle.

16.      Defendant Rodriquez's sole basis for forcing Plaintiff to exit his vehicle was because Plaintiff's hands were shaking.

3

17.     While writing the traffic citation, Defendant Rodriquez noted that Plaintiff Eckert was glancing towards his house, which was visible from the stop.

18.     Defendant Rodriquez proceeded to question Plaintiff Eckert about his activities prior to the traffic stop.

19.     Defendant Rodriquez saw Plaintiff's partner approach the traffic stop on foot from Plaintiff's residence.

20.     Defendant Rodriquez ordered her to leave.

21.     Defendant Rodriquez issued Plaintiff a written warning for the windshield violation.

22.      Defendant Rodriquez told Plaintiff Eckert he was free to leave.

23.     As Plaintiff walked away, Defendant Rodriquez continued to ask Plaintiff more questions.

24.     Plaintiff asked Defendant Rodriquez if he was free to leave, which Defendant Rodriquez contends that he found rude.

25.     Defendant Rodriquez told Plaintiff he suspected Plaintiff of having illegal drugs in his car and proceeded to interrogate Plaintiff on the matter.

26.     Plaintiff refused to engage in Defendant Rodriquez's "conversation."

27.     Defendant Rodriquez then seized Plaintiff's vehicle without probable cause.

28.     After Defendant Rodriquez seized Plaintiff's vehicle, Defendant Rodriquez contacted Defendant Green.

29.     Defendant Green deployed his canine "LEO," who, Defendant Green alleges, alerted to the presence of narcotics around Plaintiff's vehicle.

30.     A warrant for the search of Plaintiff's vehicle was issued on September 7, 2012. Defendant Rodriguez searched Plaintiff's car.

31.     No illegal substances were found during the search.

## January 2, 2013 Traffic Stop

32.     On January 2, 2013, Plaintiff was stopped in the Deming Wal-Mart parking lot by Defendant Chavez for an alleged failure to yield at a stop sign.

33.     Defendant Chavez did not witness the alleged traffic violation, but rather was acting on the report of Defendant Orosco who had called Defendant Chavez about the traffic violation.

34.     Defendant Chavez asked Plaintiff to exit the vehicle and patted Plaintiff down without reasonable suspicion that Plaintiff was armed.

35.     Defendant Chavez claims to have noticed Plaintiff's "posture to be erect and he kept his legs together."

36.     Officer Villegas arrived on the scene to issue Plaintiff the traffic citation.

37.     Defendant Chavez then told Plaintiff he was free to leave, and Plaintiff began to leave.

38.     Defendant Chavez than began to interrogate Plaintiff without probable cause.

39.     Defendant Chavez alleges that Plaintiff gave consent to search his vehicle, which Plaintiff adamantly denies.

40.     Defendant Green and Defendant Arredondo responded to the scene and used a narcotics canine to sniff Plaintiff's vehicle.  The canine "LEO" allegedly alerted to the driver's seat of Plaintiff's vehicle.

41.     Officer Rudiger and other Deming Officers were also present at this "routine" traffic stop.

42.     Defendant Orosco and Defendant Arredondo then informed Defendant Chavez that Plaintiff was known in Hidalgo County to insert drugs into his anal cavity.  This information was false.

43.    Defendant Green and Defendant Arredondo claimed to be acting as members of the Border Drug Task Force.

44.    Plaintiff was then handcuffed and taken to the Deming Police Department at or around 2:00 pm.

45.    Plaintiff requested the right to make a telephone call.  Defendant Chavez and Defendant Hernandez informed Plaintiff that he was not under arrest and therefore did not have a reason to call anyone.

46.    Plaintiff's vehicle was also seized and subsequently searched by Officers Rudiger, Hogan and Lara.

47.    No contraband was found in Plaintiff's vehicle.

48.    At or about 2:01 P.M., Defendant Chavez contacted Defendant Dougherty who approved the pursuit of a search warrant for Plaintiff's vehicle and his person, including his anal cavity.

49.    On January 2, 2013, Defendant Chavez wrote an affidavit for a search warrant that Defendant Dougherty approved for a state magistrate's signature.  The search warrant affidavit purported "to include but not limited to [Plaintiff's] anal cavity."   The search warrant limits the time of the search of Plaintiff's person from between the hours of 6:00 am and 10:00 pm. Defendant Chavez never alleged that Plaintiff inserted anything into his rectum.

50.    The search warrant failed to mention that any medical procedure was to be used, let alone specify which medical procedures would be authorized.

51.    A search warrant authorizing an anal cavity search warrant must specify what medical procedure is to be performed to be reasonable. U.S. v. Gray, 669 F.3d 556 (5th Cir. 2012).

52.    Defendant Chavez then transported Plaintiff to the Deming Emergency Room to execute the warrant for Plaintiff Eckert's person including, but not limited to his anal cavity.

53.     Dr. Ash, the attending physician, refused to conduct an "anal cavity" search of Plaintiff Eckert as he opined it was unethical.

54.     Defendant Chavez contacted Defendant Dougherty about Dr. Ash's refusal to conduct an anal cavity exam of Plaintiff.

55.     Defendant Dougherty authorized Defendant Chavez to take Plaintiff to a different Emergency Room.

56.     Defendant Chavez then contacted Defendant Gila Regional Medical Center in Silver City. Defendant Gila Regional stated it would perform the anal cavity search.

57.     Gila Regional Medical Center is located in Grant County, and not in Luna County where the City of Deming is located and the warrant was issued.

58.     A search warrant signed by the Luna Magistrate Judge in the Deming Court is not enforceable in Grant County.

## January 2, 2013 X-ray and Anal Cavity Search Under Facially Invalid Warrant

59.     Defendant Chavez and Defendant Hernandez transported Plaintiff to Defendant Gila Regional Medical Center in handcuffs.

60.     Plaintiff Eckert was admitted to the Gila Regional Medical Center Emergency Room (ER) at or around 9:04 P.M.

61.     Defendant Wilcox was Plaintiff Eckert's admitting ER physician.

62.     Defendant Wilcox ordered an abdominal X-ray of Plaintiff Eckert's abdomen.

63.     Dr. Orzel conducted an abdominal X-Ray of Plaintiff Eckert.

64.     Dr. Orzel found no foreign object in Plaintiff Eckert's rectum, or anywhere else in his abdomen.

7

65.     Dr. Orzel determined that if a strong suspicion of a retained foreign body existed, a Non-Contrast CT scan would be of additional benefit.

66.     Even if the warrant was valid, which Plaintiff disputes, the negative X-ray should have satisfied the warrant, and the search should have stopped, or in the alternative, Defendants should have sought the less invasive CT scan suggested by Dr. Orzel rather than a digital search of Plaintiff.

67.     After the negative results from the X-ray, Defendant Wilcox performed a digital rectal exam while Plaintiff protested aloud.

68.     Defendant Wilcox reportedly felt "something soft" that he said could have been stool.

69.     Upon this finding, Defendant Wilcox referred Plaintiff Eckert to Defendant Odocha for a surgical consultation.

## January 2, 2013-January 3, 2013, Warrantless Detention, Second Rectal Search, Three Enemas, Second X-Ray, and Colon Search

70.     Defendant Odocha met with Plaintiff Eckert at or about 10:00 P.M.

71.     Even if the warrant was valid originally which Plaintiff disputes, the warrant was only for a search between the hours of 6:00 A.M. to 10:00 P.M.

72.     Defendants did not have a warrant to search Plaintiff after 10:00 P.M.

73.     Any and all searches of Plaintiff described below were conducted without a warrant.

74.     Defendant Odocha performed a second physical rectal exam.

75.     Defendant Odocha concluded on or about 10:30 P.M. that only stool could be felt in Plaintiff's rectum.

76.     Defendant Odocha determined that Plaintiff was present for a "body search."

77.     Defendant Odocha ordered that Plaintiff be given enemas until all results were "clear."

78.     Plaintiff was forcibly given an enema through his anus against his consent.

79.     Plaintiff was forced to have the bowl movement in the presence of both a nurse and Defendant Chavez.

80.     Defendant Chavez searched Plaintiff's stool, but found no narcotics.

81.     Plaintiff was forcibly given an enema against his consent again.

82.     Plaintiff was again forced to have a bowl movement in the presence of a nurse and Defendant Chavez.

83.     Defendant Chavez again searched Plaintiff Eckert's stool.

84.     Defendant Chavez again failed to find any narcotics.

85.     Plaintiff was forcibly given a third enema against his consent

86.     Plaintiff was again forced to have the bowl movement in the presence of both a nurse and Defendant Chavez.

87.     Defendant Chavez searched Plaintiff Eckert's stool a third time, but found no narcotics.

88.     These searches targeted an area of Plaintiff which is highly personal and private.

89.     The above searches were extremely invasive and a total intrusion of personal privacy, especially as each enema physically penetrated Plaintiff's body.

90.     Plaintiff Eckert was then taken to be x-rayed a second time.

91.     Dr. Orzel performed an X-ray of Plaintiff Eckert's chest, including his lungs and heart.

92.     The x-ray found no narcotics hidden in Plaintiff Eckert's body.

93.     Defendant Odocha ordered a colonoscopy.

94.     Defendant Odocha scheduled the colonoscopy for 1:00 A.M on January 3, 2013.

95.     On or about 1:00 A.M. a team of Gila Regional Medical Center professionals began prepping Plaintiff for surgery.

96.    On or about 1:45 A.M. Plaintiff Eckert was taken into surgery and the colonoscopy commenced.

97.    On or about 2:15 A.M., Defendant Odocha completed the colonoscopy and informed Defendants that no narcotics were found.   At the time, Plaintiff was still under anesthesia.

98.    The colonoscopy targeted an area of Plaintiff which is highly personal and private.

99.    The colonoscopy was extremely invasive and a total intrusion of personal privacy, especially as it physically penetrated Plaintiff's body.

100.    The colonoscopy was conducted without a warrant.  Even if the warrant were valid and conducted in the appropriate time range, the colonoscopy greatly exceeded the scope of the warrant.

101.    Throughout the entirety of these events, Plaintiff protested and stated he did not want the Doctors to examine him.

102.    After Plaintiff awoke, he was escorted by Defendant Chavez and Defendant Hernandez back to the Deming Police Department.

103.    Sergeant Lovelace and Officer Esquivel then transported Plaintiff Eckert back to his home in Lordsburg, New Mexico.

104.    Through the Gila Regional Medical Center visit, Defendants Chavez and Hernandez did harass, mock and berate Plaintiff by making derogatory remarks about Plaintiff and his compromised position.

105.    During Plaintiff's illegal cavity searches, Defendants Chavez and Hernandez did continually misplace Plaintiff's privacy curtain exposing him to the public hallway during the intimate and humiliating searches.

106.    During the course of Plaintiff's  Gila Regional Medical Center visit, Plaintiff was

digitally penetrated in the rectum twice by two different doctors, he received a total of three

enemas, had his body x-rayed twice, was involuntarily placed under anesthesia, and had a tube

inserted through his rectum into his large intestine.

107.    Defendant Gila Regional has billed Plaintiff for the "services" it provided at the request

of law enforcement.

108.    Plaintiff still receives medical bills for thousands of dollars for these illegal, invasive and

painful medical procedures.

109.    Defendant Officers intentionally or recklessly humiliated Plaintiff Eckert by orchestrating

anal probing and multiple invasions of his body, including the insertion of a scope up his rectum,

into the recto sigmoid, descending colon, his transverse colon, ascending colon and into the

cecum without any probable cause to believe that Plaintiff had inserted any foreign body into his

rectum or had swallowed any contraband and despite conducting eight previous illegal searches

which were all fruitless.

110.    Plaintiff has suffered extreme and severe emotional distress and physical pain and injury

as a result of Defendants' conduct.

111.    Plaintiff fears retaliation resulting from the filing of this Complaint and requests

injunctive relief.

112.    Plaintiff is terrified to leave his residence as a result of Defendants' conduct and now

does so infrequently.

### COUNT I – UNREASONABLE SEARCH AND SEIZURE
### (SEPTEMBER 6, 2012 TRAFFIC STOP)
### (Against Defendant Rodriquez)

Plaintiff incorporates the preceding paragraphs by reference herein.

113.    Defendant Rodriquez stopped Plaintiff for a routine traffic violation.

114.    Defendant Rodriquez lacked probable cause to order Plaintiff to exit his vehicle.

115.    Defendant Rodriquez lacked probable cause to detain Plaintiff during the traffic stop, or in the alternative, Defendant Rodriquez detained Plaintiff for an unreasonable amount of time.

116.    Defendant Rodriquez lacked probable cause to interrogate Plaintiff.

117.    Defendant Rodriquez lacked probable cause to seize and search Plaintiff's vehicle.

118.    Defendant Rodriquez's acts were objectively unreasonable.

119.    Defendant Rodriquez's acts violated Plaintiff's Fourth Amendment rights to be secure in his person from unreasonable search and seizures.

120.    Defendant Rodriquez's deprivation of Plaintiff's rights caused Plaintiff damages.

121.    Defendant Rodriquez acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive Plaintiff of his Constitutional Rights.  As a result of the nature of Defendant's conduct, Plaintiff is entitled to recover punitive damages against the individual Defendant.

## COUNT II – FIRST AMENDMENT RETALIATION
## (SEPTEMBER 6, 2012 TRAFFIC STOP)
## (Against Defendant Rodriquez and Defendant Hidalgo County)

Plaintiff incorporates the preceding paragraphs by reference herein.

122.    Plaintiff believes, and therefore avers, that Plaintiff's question about whether he was free to leave caused Defendant Rodriquez to retaliate against Plaintiff by further detaining Plaintiff and seizing his vehicle.

123.    Plaintiff's statement asserting his right to be free from unlawful detentions was protected first amendment activity.

124.    Defendant Rodriquez's retaliation was unlawful and would chill an ordinary person in the exercise of first amendment rights, namely verbally asserting their rights to peace officers.

125.    As a result of Defendant Rodriquez's conduct, Plaintiff suffered damages.

126.    Defendant Rodriquez acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive Plaintiff of his Constitutional Rights.  As a result of the nature of Defendant's conduct, Plaintiff is entitled to recover punitive damages against the individual Defendant.

### COUNT III – UNREASONABLE SEARCH AND SEIZURE
### (JANUARY 2, 2013 TRAFFIC STOP RE: ARREST)
### (Against Defendant Hidalgo County, Defendant City of Deming and the Corresponding Police Officers)

Plaintiff incorporates the preceding paragraphs by reference herein.

127.    As a result of the "routine" traffic stop, Defendant officers held Plaintiff in custody from about 2:00 P.M. until 5:00 A.M.

128.    Defendant officers detained Plaintiff for such an unreasonable amount of time that Defendant officers constructively placed Plaintiff under arrest.

129.    During this arrest, Plaintiff was handcuffed, and driven around southern New Mexico making stops to the Deming police department, and two medical centers.

130.    Defendant officers lacked probable cause to arrest Plaintiff.

131.    Defendant officers did not obtain a warrant to arrest Plaintiff.

132.    Defendant officers deprived Plaintiff of his Fourth Amendment rights to be secure in his person by arresting him.

133.    The arrest of Plaintiff was wrongful, without probable cause and deprived Plaintiff of his Fourth Amendment right to be free of unreasonable seizures.

134.     The actions of Defendant officers proximately caused damages to Plaintiff in loss of liberty, embarrassment, humiliation, pain and suffering and mental and emotional distress.

135.     Defendant officers acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive the Plaintiff of his Constitutional Rights.  As a result of the nature of

Defendants' conduct, Plaintiff is entitled to recover punitive damages against the individual Defendants.

136.    The actions of the Defendant officers were the result of wither a lack of training and supervision or a de facto policy of failing to comply with Fourth Amendment Standards on the part of Hidalgo County.

### COUNT IV – UNREASONABLE SEARCH AND SEIZURE
### (JANUARY 2, 2013 TRAFFIC STOP RE: WARRANT)
### (Defendant City of Deming, Defendant Chavez, Defendant Hernandez, Defendant Dougherty, Defendant Orosco, and Defendant Arredondo)

Plaintiff incorporates the preceding paragraphs by reference herein.

137.    Defendant Chavez, Defendant Dougherty and Defendant Hernandez knew, or should have known, that the warrant to search Plaintiff's body cavity was facially invalid due to the lack of probable cause, its lack of specific description of the area to be searched, and its lack of a specific description of procedures to be used.

138.    Defendants Orosco and Arrendondo knowingly supplied false information that was used to support an allegation of probable cause to search Plaintiff's anal cavity.

139.    Defendant Chavez, Defendant Dougherty and Defendant Hernandez knew, or should have known, that to execute the warrant, Plaintiff would have to be placed under arrest, rather than kept in mere detention

140.    Defendant Chavez, Defendant Dougherty and Defendant Hernandez knew, or should have known, that but for the arrest, the warrant would be impossible to execute.

141.    Defendant Chavez, Defendant Dougherty and Defendant Hernandez knew, or should have known, that Defendant officers lacked probable cause to arrest Plaintiff Eckert and that the warrant failed to approve any such arrest.  The totality of the facts alleged in the warrant, even if true, do not constitute probable cause to believe Plaintiff had hidden drugs in his anal cavity.

14

142.    Because the warrant could not be executed without an arrest, and because Defendant officers lacked the authority to arrest Plaintiff, the execution of the search warrant was wrongful, without probable cause and deprived Plaintiff of his Fourth Amendment right to be free of unreasonable seizures.

143    Defendant Chavez, Defendant Dougherty and Defendant Hernandez knew, or should have known, that the warrant was invalid because the circumstances that lead to the warrant were in violation of Plaintiff's constitutional rights, namely the events outlined in Counts III through V of this Complaint.

144.    Defendant Chavez, Defendant Dougherty and Defendant Hernandez knew, or should have known, that any warrant which is the product of such gross violation of an individual's civil liberties would be facially invalid.  The factual support for any probable cause showing is so lacking that no reasonable police officer or prosecutor would believe that probable causes existed for the warrant.

145.    Defendant Chavez, Defendant Dougherty and Defendant Hernandez knew, or should have known, that circumstances leading up to Defendant Chavez's affidavit were insufficient to justify the requisite probable cause required by a warrant, which made the warrant invalid.

146.    Defendant Chavez, Defendant Dougherty and Defendant Hernandez knew, or should have known, that a body cavity search is a search so invasive as to require specificity in method in which the search will be conducted.

147.    Defendant Chavez, Defendant Dougherty and Defendant Hernandez knew, or should have known, that when an individual has an "erect posture" and is "keeping his legs together," is insufficient facts to support an anal cavity search, particularly when the officer is conducting a routine traffic stop.

15

148.    Defendant Chavez, Defendant Dougherty and Defendant Hernandez knew, or should have known, that the aforementioned circumstances are still insufficient to support a warrant for an anal cavity search even when an officer arbitrarily and falsely states that the individual subject to the search has hidden contraband in his anus before.

149.    Defendant Chavez, Defendant Dougherty and Defendant Hernandez knew, or should have known that a warrant to search a person's anal cavity should include the authorized medical procedures to be performed in order to be valid.  The search warrant affidavit is so vague on its face and lacking in specificity that it amounted to a prohibited general search warrant of Plaintiff's body.  The language used in the affidavit for the search for the second warrant is unclear whether the authorized search is limited to the anal cavity or extends to other parts of the body.

150.    The execution of the search warrant regarding Plaintiff was wrongful, without probable cause and deprived Plaintiff of his Fourth Amendment right to be free of unreasonable seizures.

151.    The actions of Defendants proximately caused damages to Plaintiff in loss of liberty, embarrassment, humiliation, pain and suffering and mental and emotional distress.

152.    Defendants acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive the Plaintiff Eckert of his Constitutional Rights.  As a result of the nature of Defendants' conduct, Plaintiff is entitled to recover punitive damages against the individual Defendants.

### COUNT V – UNREASONABLE SEARCH AND SEIZURE
### (JANUARY 2, 2013 TRAFFIC STOP RE: "LEO")
### (Defendant Green)

153.    Defendant Green was on notice that "LEO" was unreliable, particularly to Plaintiff's vehicle.

154.    Defendant Green knew that "LEO" had falsely alerted to Plaintiff's vehicle on September

16

6, 2012.

155.    Defendant Green was unreasonable when he relied on "LEO's" alert on January 2, 2013

regarding Plaintiff's vehicle.

156.    Defendant Green was unreasonable when he relied on "LEO's" alert to obtain a warrant

for Plaintiff's vehicle.

157.    Defendant Green was unreasonable when he believed "LEO's" alert to a seat in

Plaintiff's vehicle supported a finding of probable cause that Plaintiff had hidden drugs in his

anus.

158.    Defendant Green knew, or should have known that "LEO" was unreliable and should not

have been used in the field.

159.    The actions of Defendant proximately caused damages to Plaintiff in loss of liberty,

embarrassment, humiliation, pain and suffering and mental and emotional distress.

152.    Defendant acted willfully, knowingly and purposefully and/or with deliberate

indifference to deprive the Plaintiff Eckert of his Constitutional Rights.  As a result of the nature

of Defendant's conduct, Plaintiff is entitled to recover punitive damages against the individual

Defendants.

### COUNT VI – UNREASONABLE SEARCH AND SEIZURE
### (JANUARY 2, 2013 FIRST X-RAY)
### (Against Defendants City of Deming, Chavez, Hernandez, Wilcox, and Gila Medical Center)

Plaintiff incorporates the preceding paragraphs by reference herein.

153.    Defendant Chavez, Defendant Hernandez, Defendant Wilcox and Defendant Orzel were

acting under the color of state law when they wrongfully and without probable cause, x-rayed

Plaintiff.

154.    Defendant Chavez, Defendant Hernandez, Defendant Wilcox and Defendant Orzel did not reasonably rely on the validity of the search warrant to justify the search.

155.    Defendant Chavez, Defendant Hernandez, Defendant Wilcox and Defendant Orzel lacked probable cause to search Plaintiff with an X-ray.

156.    Defendant Chavez, Defendant Hernandez, Defendant Wilcox and Defendant Orzel's acts were objectively unreasonable.

157.    Defendant Chavez, Defendant Hernandez, Defendant Wilcox and Defendant Orzel's acts violated Plaintiff's Fourth Amendment rights to be secure in his person from unreasonable search and seizures.

158.    Defendant Chavez, Defendant Hernandez, Defendant Wilcox and Defendant Orzel's deprivation of Plaintiff's rights caused Plaintiff damages.

159.    Defendant Chavez, Defendant Hernandez, Defendant Wilcox and Defendant Orzel acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive Plaintiff of his Constitutional Rights.  As a result of the nature of Defendants' conduct, Plaintiff is entitled to recover punitive damages against the individual Defendants.

### COUNT VII – UNREASONABLE SEARCH AND SEIZURE
### (JANUARY 2, 2013 TRAFFIC STOP RE: 1st and 2nd DIGITAL PENETRATIONS)
### (Against City of Deming, Chavez, Hernandez, Wilcox, Odocha and Gila Medical Center)

Plaintiff incorporates the preceding paragraphs by reference herein.

160.    Defendant Chavez, Defendant Hernandez, Defendant Wilcox and Defendant Odocha were acting under the color of state law when they wrongfully and without probable cause, forced Plaintiff's anus to be physically penetrated digitally twice in order to conduct a search.

161.    Defendant Chavez, Defendant Hernandez, Defendant Wilcox, and Defendant Odocha did not reasonably rely on the validity of the search warrant to justify the searches.

18

162.    Even if the warrant to search Plaintiff's body cavity was valid despite it being overly vague and after the allotted time, Defendant Chavez, Defendant Hernandez, Defendant Wilcox and Defendant Odocha lacked probable cause to conduct a second highly invasive search after the first two searches were fruitless.

163.    Defendant Chavez, Defendant Hernandez, Defendant Wilcox and Defendant Odocha did not have a warrant to execute the second digital search because it occurred after the warrant had expired.

164.    Defendant Chavez, Defendant Hernandez, Defendant Wilcox and Defendant Odocha's acts were objectively unreasonable.

165.    Defendant Chavez, Defendant Hernandez, Defendant Wilcox and Defendant Odocha's acts violated Plaintiff's Fourth Amendment rights to be secure in his person from unreasonable search and seizures.

166.    Defendant Chavez, Defendant Hernandez, Defendant Wilcox and Defendant Odocha's deprivation of Plaintiff's rights caused Plaintiff damages.

167.    Defendant Chavez, Defendant Hernandez, Defendant Wilcox, and Defendant Odocha acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive Plaintiff of his Constitutional Rights.  As a result of the nature of Defendants' conduct, Plaintiff is entitled to recover punitive damages against the individual Defendants.

**COUNT VIII – UNREASONABLE SEARCH AND SEIZURE**
**(JANUARY 2, 2013 TRAFFIC STOP RE: 1st, 2nd, and 3rd ENEMAS)**
**(Against Defendants City of Deming, Chavez, Wilcox, Odocha and Gila Medical Center)**

Plaintiff incorporates the preceding paragraphs by reference herein.

169.    Defendant Chavez, Defendant Hernandez, Defendant Wilcox and Defendant Odocha and were acting under the color of state law when they wrongfully and without probable cause,

19

forced Plaintiff's anus to be physically penetrated three times in order to administer medication, i.e. three separate enemas, and forced Plaintiff to have bowl movements that was also later searched.

170.    Defendant Chavez, Defendant Hernandez, Defendant Wilcox and Defendant Odocha did not have a warrant to execute all three searches, or in the alternative did not reasonably rely on the validity of the search warrant to justify the searches.

171.    Defendant Chavez, Defendant Hernandez, Defendant Wilcox and Defendant Odocha lacked probable cause to search Plaintiff's anus three times and subsequent bowl movements.

172.    The forced enemas were objectively unreasonable, even if it was done under a valid warrant, after an x-ray, and two digital rectal exams have already determined the absence of contraband in Plaintiff's anus.

173.    The second forced enema was objectively unreasonable, even if it was done under a valid warrant, after an x-ray, two digital rectal exams, and a previous enema had already determined the absence of contraband in Plaintiff's anus.

174.    The third forced enema was objectively unreasonable, even if it was done under a valid warrant, after an x-ray, two digital rectal exams, and two previous enemas had already determined the absence of contraband in Plaintiff's anus.

175.    The search authorized by the warrant was completed when Defendant Odocha determined that nothing but stool was in Plaintiff's anus, making the subsequent enemas outside the scope of the warrant.

176.    Defendant Chavez, Defendant Hernandez, Defendant Wilcox and Defendant Odocha's acts were objectively unreasonable.

177.    Defendant Chavez, Defendant Hernandez, Defendant Wilcox and Defendant Odocha's acts violated Plaintiff's Fourth Amendment rights to be secure in his person from unreasonable search and seizures.

178.    Defendant Chavez, Defendant Hernandez, Defendant Wilcox and Defendant Odocha's deprivation of Plaintiff's rights caused Plaintiff damages.

179.    Defendant Chavez, Defendant Hernandez, Defendant Wilcox and Defendant Odocha acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive Plaintiff of his Constitutional Rights.  As a result of the nature of Defendants' conduct, Plaintiff is entitled to recover punitive damages against the individual Defendants.

## COUNT IX – UNREASONABLE SEARCH AND SEIZURE
### (JANUARY 2, 2013 TRAFFIC STOP RE: 2ND X-RAY)
### (Against Defendants City of Deming, Chavez, Hernandez, Wilcox, Odocha, and Gila Medical Center)

Plaintiff incorporates the preceding paragraphs by reference herein.

180.    Defendant Chavez, Defendant Hernandez, Defendant Wilcox, and Defendant Odocha were acting under the color of state law when they wrongfully and without probable cause, X-rayed Plaintiff in order to search Plaintiff a seventh time.

181.    Defendant Chavez, Defendant Hernandez, Defendant Wilcox, and Defendant Odocha lacked probable cause to search Plaintiff a seventh time with an X-ray.

182.    The X-ray was taken of Plaintiff's chest, which was entirely irrelevant to Defendants' already unjustified search for contraband in Plaintiff's rectum.

183.    Even if the warrant to search Plaintiff's body cavity was valid, which Plaintiff disputes, Defendant Chavez, Defendant Hernandez, Defendant Wilcox, and Defendant Odocha lacked probable cause to conduct a seventh highly invasive search after the first six searches were fruitless, and the seventh search was of an unrelated area of the body.

184.     Defendant Chavez, Defendant Hernandez, Defendant Wilcox, and Defendant Odocha's acts were objectively unreasonable.

185.     Defendant Chavez, Defendant Hernandez, Defendant Wilcox, and Defendant Odocha acts violated Plaintiff's Fourth Amendment rights to be secure in his person from unreasonable search and seizures.

186.     Defendant Chavez, Defendant Hernandez, Defendant Wilcox, and Defendant Odocha's deprivation of Plaintiff's rights caused Plaintiff damages.

187.     Defendant Chavez, Defendant Hernandez, Defendant Wilcox, and Defendant Odocha acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive Plaintiff of his Constitutional Rights.  As a result of the nature of Defendants' conduct, Plaintiff is entitled to recover punitive damages against the individual Defendants.

## COUNT X – UNREASONABLE SEARCH AND SEIZURE
## (JANUARY 2, 2013 TRAFFIC STOP RE: COLONOSCOPY)
## (Against Defendants City of Deming, Chavez, Hernandez, Wilcox, Odocha and Gila Medical Center)

Plaintiff incorporates the preceding paragraphs by reference herein.

188.     Defendant Chavez, Defendant Hernandez, Defendant Wilcox, and Defendant Odocha were acting under the color of state law when they wrongfully and without probable cause, forced Plaintiff to be put under anesthesia, have his anus physically penetrated in order to conduct a colonoscopy, and conduct a search of Plaintiff's lower digestion tract.

189.     Defendant Chavez, Defendant Hernandez, Defendant Wilcox, and Defendant Odocha's search was done without a warrant.

190.     Defendant Chavez, Defendant Hernandez, Defendant Wilcox, and Defendant Odocha lacked probable cause to search Plaintiff Eckert's anus and colon, especially in such an intrusive and painful manner.

191.    Even if Defendants had a warrant to search Plaintiff's body cavity at the time of the colonoscopy, Defendant Chavez, Defendant Hernandez, Defendant Wilcox, and Defendant Odocha would have exceeded the scope of the warrant by conducting an eighth highly invasive search after the first seven searches were fruitless.

192.    Plaintiff contends that conducting a colonoscopy is never a reasonable execution for a non-specified body cavity search and grossly extends the scope of the original warrant, even if the warrant had been in effect.

193.    Defendant Chavez, Defendant Hernandez, Defendant Wilcox, and Defendant Odocha's acts were objectively unreasonable.

194.    Defendant Chavez, Defendant Hernandez, Defendant Wilcox, and Defendant Odocha's acts violated Plaintiff's Fourth Amendment rights to be secure in his person from unreasonable search and seizures.

195.    Defendant Chavez, Defendant Hernandez, Defendant Wilcox, and Defendant Odocha's deprivation of Plaintiff's rights caused Plaintiff damages.

196.    Defendant Chavez, Defendant Hernandez, Defendant Wilcox, and Defendant Odocha acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive Plaintiff of his Constitutional Rights.  As a result of the nature of Defendants' conduct, Plaintiff is entitled to recover punitive damages against the individual Defendants.

### COUNT XI – MUNICIPAL LIABILITY AND VIOLATION OF DUE PROCESS (JANUARY 2, 2013 TRAFFIC STOP) (Against ALL Defendants)

Plaintiff incorporates the preceding paragraphs by reference herein.

197.    In practice, the City of Demining and Hidalgo County have used its peace officers to bully, harass and deprive private citizens of their civil liberties.

198.    The peace officers from each municipality have worked together and within each agency

23

to promote this environment.

199.    The municipal Defendants used their peace officers to interfere with Plaintiff's property interest and his liberty interests which entitles Plaintiff the right exclude persons from penetrating his body.

200.    Defendants' conduct, either in their individual acts or contribution to this abusive environment, caused Plaintiff to be raped repeatedly under the color of law grossly depriving him of fundamental liberty interests.

201.    In addition to the obvious violations of Plaintiff's liberty interests, Defendants also denied Plaintiff an opportunity to call his attorney when he was taken into custody and subsequently subjected to horrific treatment, depriving Plaintiff of additional Due Process rights.

202.    The Defendants have ignored procedural and substantive Due Process requirements in an unlawful campaign to harass, punish and bully private citizens who they suspect of minor criminal activities despite a laughable absence of probable cause and evidence.

203.    The municipal Defendants have trained their officers and have implemented a policy of transforming ordinary traffic stops into invasive searches and seizures, flouting constitutional requirements related to private property and liberty interests.

204.    Defendants' actions intentionally and willfully deprived Plaintiff of his property interests and Plaintiff's liberty interests without due process of law and without recourse for the arbitrary, abusive, harassing and criminal conduct of Defendants.

205.    Defendants' actions proximately caused damages to Plaintiff as previously alleged.

206.    Defendants acted willfully, knowingly and/or purposefully, and with deliberate indifference to deprive Plaintiff of his constitutional rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover punitive damages against the individual Defendants.

## COUNT XII – NEGLIGENCE
### (Against Defendant Gila Medical Center, Wilcox, and Odocha)

The Plaintiff incorporates the preceding paragraphs by reference herein.

207.    Defendants Gila Medical Center, Wilcox, and Odocha, owed Plaintiff a duty of care conforming to professional standards.

208.    Defendant Gila Medical Center, Wilcox, and Odocha breached that duty of care and failed to conform to the professional standards by preforming unnecessary medical treatments which were neither medically necessary for Plaintiff including:

    a.  The first x-ray;

    b.  the first digital penetration;

    c.  the second digital penetration;

    d.  the first enema;

    e.  the second enema;

    f.  the third enema;

    g.  the second x-ray;

    h.  and the colonoscopy.

209.    As a result of Defendant Gila Medical Center, Wilcox, and Odocha's breach of duty, Plaintiff suffered damages, including but not limited to: emotional distress, pain and suffering and the medical bills Defendant physicians continually demand from Plaintiff.

210.    Defendant physician's conduct was malicious and/or in reckless disregard of Plaintiff, and Plaintiff is entitled to punitive damages.

## COUNT XIII – LACK OF INFORMED CONSENT
### (Against Defendant Gila Medical Center, Wilcox, and Odocha)

The Plaintiff incorporates the preceding paragraphs by reference herein.

211.    Defendant Gila Medical Center, Wilcox, and Odocha were required to obtain consent for treatment by Plaintiff, and also inform the patient of sufficient facts to enable the patient to intelligently consent to treatment. Cooper v. Curry, 92 N.M. 417, 419, 589 P.2d 201, 203 (Ct. App. 1978).

212.    Defendant Gila Medical Center, Wilcox, and Odocha failed to obtain Plaintiff's consent to treatment, or in the alternative knew, or should have known that Plaintiff was not consenting and/or revoked his consent for treatment for the following:

    a.  the first x-ray;

    b.  the first digital penetration;

    c.  the second digital penetration;

    d.  the first enema;

    e.  the second enema;

    f.  the third enema;

    g.  the second x-ray;

    h.  and the colonoscopy.

213.    Defendant Gila Medical Center, Wilcox, and Odocha knew or should have known that any alleged consent given by Plaintiff was made under duress and/or revoked by Plaintiff prior to treatment.

214.    Defendant Gila Medical Center, Wilcox, and Odocha's failure to obtain consent was negligent and failed to comport with professional standards.

215.    As a result of Defendant Gila Medical Center, Wilcox, and Odocha's conduct Plaintiff suffered damages.

216.    Defendant Gila Medical Center, Wilcox, and Odocha's conduct was malicious and/or

reckless, and Plaintiff is entitled to punitive damages.

### COUNT XIV – VIOLATION OF THE UNFAIR PRACTICES ACT
### (Against Defendant Gila Medical Center, Wilcox, and Odocha)

The Plaintiff incorporates the preceding paragraphs by reference herein.

217.    Defendant Medical Center and Defendant physicians are individuals and/or a company engaging in commerce by providing services and are bound to the Unfair Practices Act.

218.    Defendant Medical Center and Defendant physicians are prohibited from engaging in unconscionable trade practices including acts or practices that are in connection with the sale of services which "takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree." N.M.S.A. 1978 § 57-12-2.

219.    Plaintiff lacked capacity and/or ability to refuse Defendants' services. The services were not performed at the request of Plaintiff, yet Defendant Gila Regional has billed Plaintiff for the services.

220.    Defendant Medical Center and Defendant physicians violated the Unfair Practices Act when they took advantage of Plaintiff's lack of capacity and/or ability.

221.    As a result of Defendants actions, Plaintiff suffered actual damages.

222.    Defendants willfully engaged in the unconscionable trade practice, and Plaintiff is entitled to treble damages. N.M.S.A  1978 § 57-12-10.

223.    Plaintiff is entitled to attorney's fees and costs.

### COUNT XV – BATTERY
### (Against Defendants City of Deming, Chavez, Hernandez, Wilcox, Odocha and Gila Medical Center)

Plaintiff incorporates the preceding paragraphs by reference herein.

224.    Defendants intentionally physically penetrated, or caused to be penetrated, Plaintiff through his anus six separate and distinct times.

27

225.    Defendants caused offensive contract with Plaintiff's person in each of the following acts:

    a.  the first digital penetration;

    b.  the second digital penetration;

    c.  the first enema;

    d.  the second enema;

    e.  the third enema;

    f.  and the colonoscopy.

226.    Defendants' conduct constituted six separate and distinct counts of battery on Plaintiff.

227.    Defendants acted together in a concerted effort to cause the batteries.

228.    As a result of the six batteries, Plaintiff suffered damages.

### COUNT XVI - FALSE IMPRISONMENT
### (Against Defendants City of Deming, Chavez, Hernandez, Wilcox, Odocha and Gila Medical Center)

Plaintiff incorporates the preceding paragraphs by reference herein.

229.    Defendants intentionally confined Plaintiff in the medical exam room without consent.

230.    Defendants knew, or should have known, that they had no lawful authority to detain Plaintiff as the warrant was facially void, or in the alternative the warrant was void at 10:00 PM on January 2, 2013.

231.    Defendants confined Plaintiff unlawfully from 9:00 PM on January 2, 2013 until he was discharged from the hospital at or around 3:00 AM on January 3, 2013.

232.    Defendants' conduct constituted false imprisonment of Plaintiff.

233.    As a result of the false imprisonment, Plaintiff suffered damages.

### JURY DEMAND

234.    Plaintiff hereby demands trial by jury.

## REQUEST FOR RELIEF

Plaintiff incorporates the preceding paragraphs by reference herein.

WHEREFORE, Plaintiff seeks the following relief:

I.      Actual and compensatory damages sufficient to make him whole.

II.     Punitive damages against Defendants sufficient to punish them and to deter further

wrongdoing;

III.    Treble damages;

IV.     Injunctive relief sufficient to protect Plaintiff and his family from the ongoing harassment

and intimidation of Defendants.

V.      Attorneys' fees, litigation expenses, costs, pre- and post-judgment interest as provided by

law; and

VI.     Such other and further relief as the Court deems just and proper.


Respectfully submitted,


*/s/ Joseph P. Kennedy*
KENNEDY LAW FIRM
Shannon L. Kennedy
Joseph P. Kennedy
1000 Second Street NW
Albuquerque, New Mexico 87102
(505) 244-1400  fax (505) 244-1406