THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DAVID ECKERT,

    **Plaintiff,**

 v.           1:13-CV-00727

THE CITY OF DEMING, et al.

    **Defendants.**

<u>**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGEMENT No. II WITH RESPECT TO DEFENDANT CHAVEZ FOR COUNT III: UNREASONABLE SEARCH AND SEIZURE**</u>

  Plaintiff David Eckert, by and through his attorney of record, hereby requests the Court grant partial summary judgment in his favor against Defendant Chavez on Plaintiff's Complaint for Civil Rights Count III.  Plaintiff herein incorporates his Motion for Partial Summary Judgment No. I for Counts VI, VII, VIII, IX and X, against Defendant Officers Chavez and Hernandez including Plaintiff's Exhibits 1-9 (Doc.26), filed 10/24/2013.

  In support of this motion, Plaintiff states the following undisputed facts:

**I.**  <u>**Statement of Undisputed Material Facts.**</u>

1.  On January 2, 2013, Plaintiff was pulled over for allegedly running a stop sign by Defendant Chavez, although Defendant Chavez did not witness the alleged traffic violation. See Plaintiff's Complaint (Doc. 1), filed 8/07/2013, at ¶¶32-33 and Defendant City's Answer, (Doc. 22), filed at 10/11/2013, at ¶¶11-12.

2.  During the traffic stop, Defendant Chavez believed Plaintiff was avoiding eye contact, and his hands shook. See Plaintiff's Motion for Summary Partial Summary Judgment No. I (Doc. 26) <u>Exhibit 1</u>, Affidavit for Search Warrant, at ¶5-6, filed 10/24/2013.

3.      Defendant Chavez asked Plaintiff to step out of his vehicle and performed a *Terry* search.

Id, at ¶7.

4.      Defendant Chavez waited for a different officer to arrive to issue the citation.  See

Plaintiff's Complaint, (Doc. 1), filed 8/07/2013, at ¶36, and Defendant City's Answer, (Doc. 22),

filed at 10/11/2013, at ¶14.

5.      During the traffic stop, Officers Villegas, Green and Arredondo where present in addition

to Defendant Chavez and Hernandez.  See Plaintiff's Complaint, (Doc. 1), filed 8/07/2013, at

¶36, 40, See Defendant City's Answer, (Doc. 22), filed on 10/11/2013, at ¶14, 17.

6.      During the traffic stop, Defendant Chavez claims the following occurred which provided

the basis for probable cause to search Plaintiff:

      1.      "While speaking with Mr. Eckert I did notice that he was avoiding eye contact with me as I asked him for his driver's license, registration and proof of insurance." See Plaintiff's Motion for Summary Partial Summary Judgment No. I (Doc. 26) <u>Exhibit 1</u>, Affidavit for Search Warrant, at ¶5, filed 10/24/2013.

      2.      "As Mr. Eckert handed me the documents that were requested I did notice his left hand began to shake at which time I had asked Mr. Eckert step out of the vehicle." Id, at ¶6.

      3.      A *Terry* search was preformed, and nothing was found. Id, at ¶7.

      4.      "While Mr. Eckert was standing outside of the vehicle I did notice his posture to be erect and he kept his legs together." Id, at ¶8.

      5.      Defendant Chavez claims he told Plaintiff he was free to leave, which Plaintiff disputes. Id, at ¶10.

      6.      Defendant Chavez claims that Plaintiff gave consent to search his vehicle, which Plaintiff disputes. Id, at ¶11.

      7.      Defendant Chavez requested to search Plaintiff's person and Plaintiff denied consent. Id, at ¶12.

      8.      A K-9 officer walked his dog around and in Plaintiff's vehicle and allegedly alerted to Plaintiff's front seat. Id, at ¶14.

      9.      An officer falsely told Defendant Chavez that Plaintiff was known to insert drugs into his anal cavity. Id, at ¶15.

      10.     "Mr. Eckert was then placed into investigative detention and was transported to the Deming Police Department." Id, at ¶16.

7.      Plaintiff asserts that Officers Rudiger, Orosco, and more unidentified officers were also

present at the traffic stop.  See Plaintiff's Complaint, (Doc. 1), filed 8/07/2013, at ¶41, 42.

8.      Plaintiff was handcuffed and taken to Deming Police Department at or around 2:00 PM. See Plaintiff's Complaint, (Doc. 1), filed 8/07/2013, at ¶44, and Defendant City's Answer, (Doc. 22), filed 10/11/2013, at ¶ 21.

9.      Plaintiff was in police custody at least by 2:00 PM on January 2, 2013, and was de facto under arrest. (See also United States v. White, 584 F.3d 935, 952 (10th Cir. 2009)(where "[a]n arrest is distinguished from an investigative *Terry* stop by the involuntary, highly intrusive nature of the encounter. For example, the use of firearms, handcuffs, and other forceful techniques generally exceed the scope of an investigative detention and enter the realm of an arrest."(citations and quotations omitted)).

10.     Defendants did not seek or obtain a warrant to arrest Plaintiff.  See Plaintiff's Complaint, (Doc. 1), filed 8/07/2013, at ¶131 and Defendant City's Answer, (Doc. 22), filed 10/11/2013, at ¶ 63.

11.     For the purposes of this motion, Plaintiff contends he was not free to leave Defendants' custody until after 2:35 AM on January 3, 2013 when Plaintiff was discharged from the hospital. See Plaintiff's Motion for Summary Partial Summary Judgment No. I (Doc. 26) Exhibit 3, January 2, 2013 Police Report, filed 10/24/2013.

12.     The dog who allegedly alerted to Plaintiff's vehicle had falsely alerted on at least two previous occasions on September 6, 2012 with the same vehicle in question, and again on October 13, 2012.  Exhibit 1, Search Results from September 7, 2012 Search re: Eckert, and Exhibit 2, Search Results from October 13, 2012 re: Young.

13.     The dog who performed the drug search was born on January 28, 2010. See Exhibit 3, Graduation Certificate for 2-Day Handler Course.

14.     The dog was allegedly certified by the State of New Mexico Corrections Department on April 27, 2011.  See Exhibit 4, Letter of Completion.

15.     However, the New Mexico Department of Corrections have no record of the K-9 officer or of the dog ever being trained by them. See Exhibit 5, IPRA Response Email Date October 10, 2013.

16.     If the dog was certified by the New Mexico Department of Corrections, the certification expired on April 27, 2012.  See Exhibit 6, K-9 Narcotics Detection Training Certificate.

17.     The dog whom Defendant Chavez relied upon for probable cause was not certified on January 2, 2013, or was otherwise unreliable due to his previous false alerts during traffic stops.

## II.     Introduction to Legal Analysis

This motion focuses on the scope of the initial seizure of Plaintiff for an alleged traffic violation; the order for Plaintiff to exit his vehicle; the pat-down search of Plaintiff; the evolution of the initial traffic stop into an unconstitutional arrest and search; and the absence of probable cause for the arrest of Plaintiff.  Plaintiff was pulled over by Defendant Chavez who did not witness any traffic violation several minutes after the alleged violation occurred.  From there, Defendant Chavez delayed Plaintiff's release as he was waiting for another officer to come to issue the traffic citation.  Plaintiff claims the stop was pre-textual and not legitimate in its inception.  Furthermore, Defendant Chavez ordered Plaintiff out of his vehicle and searched Plaintiff without reasonable suspicion that illegal activity was occurring.  This seizure was a violation of Plaintiff's Fourth Amendment constitutional rights.

After Plaintiff was seized, an unreasonable amount of force was displayed by the presence of at least five, though Plaintiff contends more, officers present at this allegedly "routine traffic stop" for running a stop sign.  Among the officers present were Hidalgo County

4

Sheriff's Officers who left their jurisdiction to come to Luna County to participate in a routine traffic stop. Plaintiff's vehicle was then searched by an unreliable narcotics dog who is indistinguishable from a pet. Defendant Chavez relied on the dog, despite the lack of training. The fact that the dog had falsely alerted to this exact same vehicle not three months prior was direct evidence that the dog's alleged alert was inherently unreliable. Defendant Chavez also relied on what can only be construed as unsubstantiated gossip to handcuff Plaintiff and hold him in police custody for over twelve hours, where Plaintiff underwent horrific and tortuous forced medical anal canal probing searches. The "medical" searches are not the subject of this motion rather the subject of Plaintiff's first motion for summary judgment. However, those searches directly resulted from the unconstitutional conduct of Chavez. Defendant Chavez had no warrant to arrest Plaintiff, and had no reasonable suspicion, let alone probable cause, of illegal activity to justify over twelve hours in police custody. Defendant Chavez violated Plaintiff's Fourth Amendment Rights when Plaintiff was unlawfully arrested and held for over twelve hours without probable cause.

### III.    Standard of Review

The general rule for summary judgment is that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted." D.N.M.LR-CIV. 56.1(b). However, in addition to disputing a fact's truthfulness or materiality, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. FED. R. CIV. P. 56(c)(2). "Where different ultimate inferences may

properly be drawn, the case is not one for summary judgment." <u>Webb v. Allstate Life Ins. Co.</u>, 536 F.2d 336, 339 (10th Cir. 1976).

**IV:     Defendant Chavez Exceeded the Scope of a Routine Traffic Stop When He Initiated a *Terry* Search.**

"To determine the reasonableness of an investigative detention, we make a dual inquiry, asking first 'whether the officer's action was justified at its inception,' and second 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" <u>United States v. Williams</u>, 271 F.3d 1262, 1266 (10th Cir. 2001)(quoting <u>Terry v. Ohio</u>, 392 U.S. at 20, 88 S.Ct. 1868).   Defendant Chavez's seizure of Plaintiff met neither of these prongs.  Defendant Chavez pulled Plaintiff over for a traffic violation, allegedly running a stop sign that he did not witness.  He made Plaintiff wait for a different officer to arrive to issue the citation.  The inception of the traffic stop is contrary to normal procedure indicating that the traffic stop in itself was not justified in its inception.  Defendant Chavez gives no reason why the officer who witnesses the alleged traffic violation could not pull Plaintiff over, nor is there any reasonable basis for Defendant Chavez to force Plaintiff to wait until more officers arrived to the scene before issuing the citation.  The stop itself was an unreasonable seizure.   Furthermore, if the court determines, viewing the facts in the light most favorable to Defendant Chavez,  that the procedurally flawed traffic stop was reasonable, Defendant Chavez's order for Plaintiff to exit his car and the subsequent search of Plaintiff exceeded the "'scope of the circumstances which justified the interference in the first place.'" <u>Id</u>, 271 F.3d 1262, 1266 (10th Cir. 2001)(quoting <u>Terry v. Ohio</u>, 392 U.S. at 20, 88 S.Ct. 1868).

While Defendant Chavez was conducting a routine traffic stop, the circumstances of the routine traffic stop limited Defendant Chaves' scope to being able to "'request a driver's license and vehicle registration, run a computer check, and issue a citation. When the driver has

produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning.'" United States v. Shareef, 100 F.3d 1491, 1501 (10th Cir. 1996)( quoting United States v. Gonzalez–Lerma, 14 F.3d 1479, 1483 (10th Cir.)).  Defendant Chavez's order to Plaintiff to exit his vehicle and the subsequent pat down search of Plaintiff exceeded the scope of the traffic stop.

"[F]urther questioning is permissible under two circumstances. First, if the officer has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring, the officer may detain the driver for questioning unrelated to the purpose of the initial traffic stop. Second, if the traffic stop has become a consensual encounter, the officer may continue to question the driver." United States v. Caro, 248 F.3d 1240, 1244 (10th Cir. 2001).  Defendant Chavez cannot establish either of the two requirements which would have justified his order to Plaintiff to exit his vehicle, and subsequent search of Plaintiff.  Defendant Chavez had no objectively reasonable basis to believe illegal activity was occurring.  The only facts which Defendant Chavez allege to justify his order and search were that Plaintiff was avoiding eye contact, and Plaintiff's hands were shaking.  Neither of these allegations constitute a reasonable suspicion that criminal activity is occurring.   The Tenth Circuit has:

> "repeatedly held that nervousness is of limited significance in determining reasonable suspicion and that the government's repetitive reliance on ... nervousness ... 'must be treated with caution." *United States v. Fernandez,* 18 F.3d 874, 879 (10th Cir.1994) (quoting *United States v. Millan–Diaz,* 975 F.2d 720, 722 (10th Cir.1992)). Nervousness alone cannot support reasonable suspicion of criminal activity. *See id.* at 880. This is because it is common for most people 'to exhibit signs of nervousness when confronted by a law enforcement officer' whether or not the person is currently engaged in criminal activity. *Wood,* 106 F.3d at 948. Thus, absent signs of nervousness beyond the norm, we will discount the detaining officer's reliance on the detainee's nervousness as a basis for reasonable suspicion."

United States v. Salzano, 158 F.3d 1107, 1113 (10th Cir. 1998).[1]  Plaintiff contends that eye contact avoidance, and shaking hands are manifestations of the nervousness the Tenth Circuit has clearly established to be insufficient for reasonable suspicion. See United States v. Williams, 271 F.3d 1262, 1268 (10th Cir. 2001)(an officer's "testimony as to the defendant's rapid breathing, trembling hands, and throat-clearing constituted a mere 'generic claim of nervousness,' and therefore discounted the nervousness as a factor in its reasonable suspicion analysis."). Therefore, Defendant Chavez's contention that Plaintiff was avoiding eye contact, and was shaking constituted general nervousness, and did not provide a basis to justify Defendant Chavez ordering Plaintiff out of his car and conducting a search. Thus Defendant Chavez's order constituted an unlawful seizure under the Fourth Amendment, and violated Plaintiff's rights.

Plaintiff did not consent to the seizure.  "[A]fter an officer issues the citation and returns any materials provided, the driver is illegally detained only if the driver has objectively reasonable cause to believe that he or she is not free to leave. United States v. Shareef, 100 F.3d 1491, 1501 (10th Cir. 1996)(citing United States v. Turner, 928 F.2d 956, 959 (10th Cir.), cert. denied, 502 U.S. 881, 112 S.Ct. 230, 116 L.Ed.2d 187 (1991)).   Plaintiff had no objectively reasonable basis to believe he was free to leave or free to ignore Defendant Chavez's order to exit the vehicle.  Not only was he ordered out of his car, there were at least five armed and uniformed officers present during the initial stages of the stop.  Plaintiff also had to wait while his car was illegally searched by the dog, and then he was handcuffed and transported to the police station while the officers sought to obtain a facially unreasonable search warrant for Plaintiff's "anal cavity."  No reasonable person in Plaintiff's position would have felt free to leave the roadside

---

[1] See also United States v. W., 219 F.3d 1171, 1179 (10th Cir. 2000)(citing United States v. Wald, 208 F.3d 902, 907 (10th Cir.2000)("The Tenth Circuit has held that nervousness 'is of limited significance' in determining whether probable cause to search a car trunk exists because it is not uncommon for most citizens, even innocent ones, to exhibit signs of "innocuous" nervousness when confronted by a law enforcement officer.")

because Plaintiff was in fact, and undisputedly, not free to leave, and therefore, the interaction was not consensual.

**V:      The Detention of Plaintiff Became an Arrest, Which was Unlawful.**

*i.      The Handcuffing and Detention of Plaintiff from 2:00 PM to 2:35 AM Constituted an Arrest.*

If the court determines that Defendant Chavez acted reasonably when he ordered Plaintiff out of his car, the circumstances of the "detention" quickly escalated into an unlawful arrest. "[U]nder established Tenth Circuit law, an arrest is a seizure that requires probable cause. Smith v. Kenny, 678 F. Supp. 2d 1124, 1168 (D.N.M. 2009)(citing United States v. Perdue, 8 F.3d 1455, 1461 (10th Cir. 1993)).  However, "a police officer can temporarily detain an individual suspected of criminal activity if the officer can point to 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' United States v. Perdue, 8 F.3d 1455, 1461 (10th Cir. 1993) (quoting Terry v. Ohio, 392 U.S. at 21, 88 S.Ct. at 1880). "*Terry* stops must be limited in scope to the justification for the stop. Officers may ask the detained individual questions during the *Terry* stop in order to dispel or confirm their suspicions, but the detainee is not obliged to respond."  United States v. Perdue, 8 F.3d 1455, 1462 (10th Cir. 1993)(citing *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983); *United States v. Brignoni–Ponce,* 422 U.S. 873, 881–82, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975). (quotations omitted).  "Whether an investigative detention has evolved into an arrest is always a case-specific inquiry, but it has been clear for some time that the use of handcuffs generally converts a detention into an arrest." Manzanares v. Higdon, 575 F.3d 1135, 1150 (10th Cir. 2009).  Not only was Plaintiff handcuffed, Plaintiff's detention went far beyond a typical *Terry* stop.

Plaintiff was questioned and held in the undisputed presence of at least five officers, although Plaintiff contends more officers were present.  Plaintiff was handcuffed and held in custody for over twelve hours; there was no limit in scope to the detention; the excess of twelve hour hold was not "temporary;" and Plaintiff was obligated to respond to Defendants. See Smith v. Kenny, 678 F. Supp. 2d 1124, 1168 (D.N.M. 2009)(where probable cause was required when individuals "were in custody-during which they were greeted at gun-point, ordered to turn around and put their hands above their head, handcuffed, and transported to a remote location-over a span of approximately forty-five minutes.").  In Manzanares, the court held that "No reasonable officer could divine from our precedent the notion that a three-hour, handcuffed detention without any basis for the use of force was anything short of an arrest." Manzanares v. Higdon, 575 F.3d 1135, 1150 (10th Cir. 2009).  Here Plaintiff was handcuffed and held in detention for twelve hours.  Clearly, Plaintiff's detention evolved into an arrest; thereby requiring officers to have probable cause for the arrest. See United States v. Perdue, 8 F.3d 1455, 1462 (10th Cir. 1993)(where "[a]n encounter between police and an individual which goes beyond the limits of a *Terry* stop, however, may be constitutionally justified **only by** probable cause or consent." United States v. Perdue, 8 F.3d 1455, 1462 (10th Cir. 1993)(emphasis added).  Clearly Plaintiff was not free to leave, nor was he in an investigative detention, when he was handcuffed, escorted to the police station, and subsequently detained for over twelve hours for a series of inhumane and degrading medical procedures.  Plaintiff was arrested by Defendants.  Such an arrest requires probable cause to believe that Plaintiff had committed or was committing a crime.

     *ii.*     ***Defendants Had No Probable Cause to Arrest Plaintiff.***

"[T]he primary concern is 'whether a reasonable officer would have believed that probable cause existed to arrest the defendant based on the information possessed by the arresting officer.'" United States v. Valenzuela, 365 F.3d 892, 896-97 (10th Cir. 2004) (quoting Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312 (10th Cir.2002)). "[N]either may a court arrive at probable cause simply by piling hunch upon hunch. Thus, in assessing the totality of the circumstances, a reviewing court 'must examine the facts individually in their context to determine whether rational inferences can be drawn from them' that support a probable cause determination." United States v. Valenzuela, 365 F.3d 892, 897 (10th Cir. 2004). Defendants contend that Plaintiff was free to leave after Plaintiff was issued a traffic citation and a *Terry* search was performed.  Here is where the investigative detention would have ended; however Defendants allege that Plaintiff consented to further police interaction.  Although Plaintiff adamantly refutes that he was ever free to leave or that he consented to a search of his vehicle (which is manifest by the mere fact Defendants sought a search warrant for the vehicle), neither factual assertion is necessary for Plaintiff's claim that he was unlawfully arrested.

Even if Plaintiff had been explicitly told he was free to leave, and he nonetheless decided to stay and had consented to the vehicle search, the only facts which Defendants allege occurred during this hypothetic consensual encounter was that an uncertified, unreliable dog alerted to **the vehicle**, and that Defendant Chavez was told a rumor that Plaintiff was known to insert drugs into his anal cavity.  Neither of these allegations create probable cause to arrest Plaintiff, or to justify a twelve hour detour to visit a hospital of horrors.  Nothing in Defendant Chavez's affidavit suggests, alleges or otherwise suspects that Plaintiff was concealing drugs on his person, or was in violation of a law.  At best, Defendants have established there they had an unfounded suspicion that there were drugs in Plaintiff's vehicle, which ordinarily would result in

a search of a vehicle, and then an issuance of an arrest warrant based on an actual finding of contraband in the vehicle.  Defendant's speculation that Plaintiff may be hiding drugs in his anal cavity is nothing more than a wild hair hunch, and not a basis for probable cause to arrest.  This allegation is based, in part, upon the preposterous proposition that a dog's alert in a seating area of a car means that a person is likely carrying drugs up his anus.  In this case, Defendants piled on hunch after unsubstantiated hunch which they unreasonably used to justify their continued arrest of Plaintiff. "'[A] canine's alert to the presence of contraband during an exterior sniff of a vehicle gives rise to probable cause for agents to search that vehicle's interior.'" United States v. Parada, 577 F.3d 1275, 1282 (10th Cir. 2009)(quoting United States v. Forbes, 528 F.3d 1273, 1277 (10th Cir.2008)).  A sniff only creates probable cause to search the vehicle and not Plaintiff's person.  Therefore, Defendants cannot rely on the dog sniff as probable cause for arrest, as it provided at most only probable cause to a search the car.

Plaintiff contends that this dog was known by Defendant Chavez to be unreliable, and "[a] dog alert might not give probable cause if the particular dog had a poor accuracy record." United States v. Parada, 577 F.3d 1275, 1283 (10th Cir. 2009)(quotations omitted).  In Plaintiff's Complaint, Plaintiff alleges Count V, which challenges that adequacy of this particular dog's poor accuracy record.  See Plaintiff's Complaint, at ¶153-152[sic].  The dog in question has an established poor accuracy record.  In addition, the dog in question was not certified during the search.  "[I]t surely goes without saying that a drug dog's alert establishes probable cause *only if* that dog is reliable. ... [C]ourts typically rely on the dog's certification as proof of its reliability. *See id.*; *United States v. Kennedy,* 131 F.3d 1371, 1378 (10th Cir.1997) ("[W]ith a canine, the reliability should come from the fact that the dog is trained *and annually certified* to perform a physical skill.") (Quotation omitted and emphasis added). After all, it is safe to assume that

canine professionals are better equipped than judges to say whether an individual dog is up to snuff. **And beyond this, a dog's credentials provide a bright-line rule for when officers may rely on the dog's alerts**—a far improvement over requiring them to guess whether the dog's performance will survive judicial scrutiny after the fact." United States v. Ludwig, 641 F.3d 1243, 1251 (10th Cir. 2011) cert. denied, 132 S. Ct. 306, 181 L. Ed. 2d 187 (U.S. 2011)(citations omitted)(emphasis added).   Defendant Chavez has no evidence of this dog's training or credentials.  All evidence shows that this dog was not credentialed and known to be unreliable at the time of the sniff of Plaintiff's car.

Although Plaintiff contends that the dog's alleged alert itself was not enough to establish probable cause for the arrest, Defendant Chavez's reliance on the dog was unreasonable because the dog was not certified and had no credentials.  Defendant Chavez had a duty when he relied on the dog for probable cause to arrest to verify the dog was in fact an accurate narcotics dog, and not a pet. See also United States v. Kennedy, 131 F.3d 1371, 1378 (10th Cir. 1997)("When the annual certification process involves actual field testing and grading of the canine's drug-detection skills ... the canine's reliability is sufficient for a probable cause determination absent some circumstance that justifies a more complete examination of the canine's skill and performance.")(internal quotations omitted).  To prove the dog in question was reliable, at a minimum, Defendant Chavez must show that the dog was annually certified with actual field testing.  Not only can Defendant Chavez not show the dog was certified, Defendant Chavez cannot show the dog ever received field training in the first place.  "The question—similar to every inquiry into probable cause—is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime. A sniff is up to snuff when it meets that test."

<u>Florida v. Harris</u>, 133 S. Ct. 1050, 1058, 185 L. Ed. 2d 61 (2013).  Here, the dog's sniff is not up

to snuff.   Regardless, the dog did not alert to Plaintiff's anus or to his person even.  Plaintiff's

arrest lacked probable cause, and was therefore and an unlawful violation of Plaintiff's Fourth

Amendment Rights.

<u>**CONCLUSION**</u>

For all of the above reasons, Plaintiff moves this Court to grant Motion for Summary

Judgment for Count III against Defendant Chavez.

Respectfully submitted,

<u>***Shannon L. Kennedy***</u>
KENNEDY LAW FIRM
Joseph Kennedy
Shannon Kennedy
Theresa Hacsi
*Attorneys for Plaintiff*
Albuquerque, New Mexico 87102
(505) 244-1400 fax (505) 244-1406

<u>**CERTIFICATE OF SERVICE**</u>

I certify that a true and correct copy of the foregoing was sent to all counsel of record on
the day of its filing via the CM/ECF filing system.

<u>***Shannon L. Kennedy***</u>
Shannon Kennedy