# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

**DAVID ECKERT**

     **Plaintiff,**

                                         **No. 2:13-cv-00727-JB/WPL**

**vs.**

**THE CITY OF DEMING.**
**DEMING POLICE OFFICERS BOBBY OROSCO, ROBERT CHAVEZ,**
**and OFFICER HERNANDEZ;**
**HIDALGO COUNTY; HIDALGO COUNTY SHERIFF OFFICERS**
**DAVID ARREDONDO, ROBERT RODRIGUEZ,**
**and PATRICK GREEN;**
**DEPUTY DISTRICT ATTORNEY DANIEL DOUGHERTY,**
**GILA REGIONAL MEDICAL CENTER,**
**ROBERT WILCOX, M.D.,**
**And OKAY H. ODOCHA, M.D.**

     **Defendants.**

## DEFENDANT DEPUTY DISTRICT ATTORNEY DANIEL DOUGHERTY'S MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS ON THE GROUNDS OF QUALIFIED IMMUNITY

Pursuant to Fed.R.Civ.P. 12(b)(6) and D.N.M.LR-Civ. 7, Defendant Deputy District Attorney Daniel Dougherty ("DDA Dougherty") moves to dismiss Plaintiff David Eckert's Complaint to Recover Damages for Deprivation of Civil Rights and Personal Injury (the "Complaint") against him as follows:

## I.    INTRODUCTION

Defendant Dougherty was a Deputy District Attorney for the Sixth Judicial District at all times material. Complaint at ¶ 10.[1] This case arises from DDA Dougherty's participation in the

---

[1] For purposes of this motion only, DDA Dougherty will assume *arguendo* that relevant facts as pled are true.

issuance of a search warrant on January 26, 2013. Complaint at ¶ 49. DDA Dougherty was acting under color of state law and in the course and scope of his employment as a Deputy District Attorney at all times material. Complaint at ¶ 10. At or about 2:01 p.m., Deming Police Officer Robert Chavez contacted DDA Dougherty who approved the pursuit of a search warrant for Plaintiff's vehicle and his person, including his anal cavity. Complaint at ¶ 48. DDA Dougherty approved a search warrant written by Officer Chavez for a judge's signature. Complaint at ¶ 49. The search warrant was signed by a judge. Id. When a hospital refused to assist in the execution of the warrant, DDA Dougherty was contacted for authorization to take Plaintiff to another hospital for the search described in the warrant. Complaint at ¶¶ 54 and 55. This is the entire extent of DDA Dougherty's involvement with Plaintiff or the incidents alleged in the Complaint.

## II. STANDARDS FOR DISMISSAL UNDER RULE 12(c)

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties. *See* Kruzitis v. Okuma Mach. Tool, Inc., 40 F.3d 52, 54 (3d Cir. 1994)("Under Rule 12(c), we will not grant judgment on the pleadings unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.")(internal quotation marks omitted). A "[j]udgment on the pleadings should not be granted 'unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" Park Univ. Enterprises, Inc. v. Am. Cas. Co. of Reading, Pa., 442 F.3d 1239, 1244 (10th Cir. 2006)(citing United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000)).

A complaint challenged by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citation omitted). "[T]he Supreme Court recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1967, 1969). "The [Supreme] Court [of the United States] explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1974)(alterations omitted). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177.

In determining the sufficiency of a complaint, all well-pleaded factual allegations are to be taken as true. See Timpanogos Tribe v. Conway, 286 F.3d 1195, 1204 (l0th Cir. 2002). "Nevertheless, conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Belman, 935 F.2d 1106, 1110 (l0th Cir. 1991). Based on the well- pleaded facts, as distinguished from conclusory allegations, the Complaint fails

to state a claim upon which relief can be granted against DDA Dougherty and this motion should be granted.

## III.   DDA DOUGHERTY IS ENTITLED TO PROSECUTORIAL  IMMUNITY.

In this case under the facts alleged, there is no question that DDA Dougherty was acting in the course and scope of his employment as a prosecutor.  The United States Supreme  Court  has observed  that  courts  are  virtually  unanimous  in  holding  "that  a prosecutor enjoys absolute immunity  from  [42  U.S.C.]  §  1983  suits  for  damages  when  he  acts  within  the  scope of his prosecutorial duties." Imbler v. Pachtman, 424 U.S. 409, 420 (1976). The unanimity is a product of the adversarial system, because without immunity for participants in the judicial process, "[i]t is inevitable that many of those who lose will pin the blame on judges, prosecutors, or witnesses and will bring suit against them in an effort to relitigate the underlying conflict." Mitchell v. Forsyth, 472 U.S. 511, 521-22 (1985).   The common law's recognition of absolute immunity for prosecutors  is rooted  in  the  concern  that  "harassment  by  unfounded  litigation  would  cause  a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead  of  exercising  the  independence  of  judgment  required  by  his  public  trust."  Imbler v. Pachtman, 424 U.S. at 423. Prosecutors are absolutely immune  for  those  activities  "intimately associated with the judicial phase of the criminal process."  Id. at 430. "The scope of prosecutorial immunity,  however,  is  not  limitless,  and  "[a] prosecutor's  administrative  duties  and  those investigatory  functions  that  do  not  relate  to  an  advocate's  preparation  for  the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity."  Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1489 (10th Cir. 1991).  In those instances, the prosecutor is entitled to qualified immunity.  While prosecutorial  immunity may  "leave  the  genuinely  wronged [litigant] ...without  civil  redress  against  a prosecutor whose malicious or dishonest action deprives him"of

a fundamental right, the "alternative of qualifying a prosecutor's immunity would disserve the broader public interest." Imbler v. Pachtman, 424 U.S. at 427.

DDA Dougherty is entitled to qualified immunity for his actions taken in this case as pled by Plaintiff. Qualified immunity recognizes the legitimate "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982)(quoting Butz v. Economou, 438 U.S. 478, 506 (1978)). Qualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate the law. Malley v. Briggs, 475 U.S. 335, 341 (1986). Qualified immunity protects federal and state officials from liability for discretionary functions and from "the unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit." Siegert v. Gilley, 500 U.S. 226, 232 (1991). To balance the interests of the complaining individual, and the burden put upon the government official in defending such cases, "courts recognize the affirmative defense of qualified immunity, which protects 'all but the plainly incompetent or those who knowingly violate the law.'" Gross v. Pirtle, 245 F.3d 1151, 1155 (10th Cir. 2001)(quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." Becker v. Bateman, 709 F.3d 1019, 1022 (10th Cir. 2013). In determining whether a right is clearly established, the relevant, dispositive inquiry is whether it would be clear to a reasonable public official that his conduct was unlawful in the situation he confronted. Saucier v. Katz, 533 U.S. 194, 202 (2001), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223, 236 (2009). When a defendant raises the affirmative defense of qualified immunity, "a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided

where the defense is dispositive." <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." <u>Ashcroft v. al-Kidd</u>, 131 S. Ct. 2074, 2083 (2011). The qualified immunity privilege is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)).

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. . . . In the course of determining whether a constitutional right was violated on the premise alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established. This is the process for the law's elaboration from case to case, and it is one reason for our insisting upon turning to the existence or nonexistence of a constitutional right as the first inquiry. The law might be deprived of this explanation were a court simply to skip ahead to the question whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case.

<u>Saucier v. Katz</u>, 533 U.S. at 201 (citations omitted).

If a plaintiff meets his or her burden of establishing a violation of a constitutional right, he or she must demonstrate that the right alleged to have been violated was clearly established at the time of the defendant's allegedly unlawful conduct. *See* <u>Holland ex rel. Overdorff v. Harrington</u>, 268 F.3d at 1186; <u>Gross v. Pirtle</u>, 245 F.3d at 1156; <u>Albright v. Rodriguez</u>, 51 F.3d 1531, 1534 (10th Cir. 1995). If the plaintiff fails to satisfy either part of this two-part inquiry, the court must grant the defendant qualified immunity. *Id.*

**A.    There Was Probable Cause for DDA Dougherty to Approve Law Enforcement's Pursuit of the Issuance of a Search Warrant with a Judge.**

DDA Dougherty is alleged to have participated in an unreasonable search and seizure related to the issuance of a search warrant.  Plaintiff claims that DDA Dougherty knew or should have known there was no probable cause for approving the law enforcement officer's  affidavit to issue the search warrant.  This is not true.  A district court judge signed the search warrant after exercising his independent obligation to determine that there was probable cause for the warrant to issue.  Complaint at ¶ 49.  The Tenth Circuit has held that when a search is conducted pursuant to a warrant, the warrant is valid so long as it meets the normal constitutional standards - "'probable cause supported by an oath or affirmation and a particular description of the place, persons and things to be searched and seized.'" United States v. Green, 178 F.3d at 1106 (quoting United States v. Wicks, 995 F.2d 964, 972 (10th Cir. 1993)).

The Supreme Court requires that a judge be provided information sufficient to determine the existence of probable cause before he or she issues a warrant.  *See* Illinois v. Gates, 462 U.S. 213, 239 (1983).   A judge must consider the totality of the circumstances described in the warrant affidavit to determine probable cause, which exists when "there is a 'fair probability' that contraband or other evidence will be found in a particular place." United States v. Biglow, 562 F.3d 1272, 1280-81 (10th Cir. 2009)(quoting Illinois v. Gates, 462 U.S. at 238). A  judge's decision to issue a search warrant may not be solely a ratification of the law enforcement official's conclusion that a suspect has committed a crime; rather, affidavits supporting a search-warrant request must provide the judge with a substantial basis on which to issue a warrant. *See* United States v. Bigelow, 562 F.3d at 1281; United States v. Prince, 593 F.3d 1178, 1186 (10th Cir. 2010) ("An affidavit submitted in support of a search warrant must provide the magistrate with a substantial basis for determining the existence of probable cause.")(internal quotation marks omitted).

To assure that warrants are not based on bare conclusions, the Supreme Court has mandated the courts to "conscientiously review the sufficiency of affidavits on which warrants are issued." Illinois v. Gates, 462 U.S. at 239. *See* United States v. Biglow, 562 F.3d at 1281. A judge's finding of probable cause is nevertheless given great deference, with the court's role in reviewing the probable-cause finding limited to the sufficiency of the warrant affidavit; the Supreme Court prohibits after-the-fact de novo scrutiny of the probable-cause determination. *See* United States v. Biglow, 562 F.3d at 1281 (quoting Illinois v. Gates, 462 U.S. at 238-40, and Massachusetts v. Upton, 466 U.S. 727, 733 (1984)). "In determining whether probable cause supported the issuance of a search warrant, we give 'great deference' to the decision of the issuing magistrate or judge." United States v. Cusamano, 83 F.3d 1247, 1250 (10th Cir. 1996) (en banc) (quoting United States v. Williams, 45 F.3d 1481, 1485 (10th Cir. 1995)). The appellate court only reviews whether the issuing magistrate or judge had a "substantial basis" for finding probable cause, requiring "a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." Id. (quotation omitted).

In other words, the judge must perform his or her own unbiased and independent review of the facts presented. *See* United States v. Leon, 468 U.S. 897, 914 (1984). In this case, the judge came to the same conclusion that DDA Dougherty had reached based on the information provided: there was probable cause to issue a search warrant. The Judge's signature and issuance of the search warrant cuts off any liability for DDA Dougherty on the grounds there was no probable cause to approve the affidavit for the warrant or that he violated clearly established constitutional law.

**B. It Was Reasonable for DDA Dougherty to Advise Law Enforcement That the Search Warrant Could Be Executed in Another Hospital in the Sixth Judicial District.**

The Plaintiff's second theory against DDA Dougherty is that he participated in an unreasonable search and seize when he advised law enforcement officers that they could take Plaintiff to Gila Regional Medical Center ("GRMC") to have the warrant completely executed. Law enforcement officers called DDA Dougherty for advice regarding a Deming emergency room doctor's refusal to execute the search warrant. Complaint at ¶¶ 54 and 55. DDA Dougherty advised that the search warrant could be executed in another hospital. Id. GRMC is in another county in the Sixth Judicial District, the judicial district in which the warrant was issued. DDA Dougherty has qualified immunity for this action as well.

Even if GRMC was outside the officers' jurisdiction, in United States v. Green,178 F.3d 1099, 1105 (10th Cir. 1999), the Tenth Circuit addressed this specific situation. A defendant contending that the police officers who "investigated him, obtained warrants to search his residence, and executed that warrant were acting outside their jurisdiction." Id. at 1105. The Tenth Circuit stated that "the Fourth Amendment requires only that the warrant contain 'probable cause supported by an oath or affirmation and a particular description of the place, persons and things to be searched and seized.'" Id. at 1106 (quoting United States v. Wicks, 995 F.2d at 972). Accordingly, the Tenth Circuit held that the Fourth Amendment is satisfied where officers obtain a warrant, grounded in probable cause and phrased with sufficient particularity, from a Judge of the relevant jurisdiction authorizing a search, even if those officers are acting outside their jurisdiction as defined by state law. Id.

The circumstances in United States v. Green are legally indistinguishable from the situation here. Just as in United States v. Green, Plaintiff contends here that DDA Dougherty was acting

beyond his authorized jurisdiction when he approved a warrant that the officers had to execute in Grant County.  United States v. Green  holds that an officer's jurisdiction or lack of jurisdiction under state law is irrelevant to whether the officer's obtaining or executing a warrant is valid under the Fourth Amendment.  DDA Dougherty is entitled to the defense of qualified immunity and dismissal from this action.

> **C.     The filing of this Motion entitles DDA Dougherty and other Defendants to a stay of Discovery in this case.**

The broad protection afforded by qualified immunity gives officials "a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery.'" Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1185 (10th Cir. 2001)(quoting Behrens v. Pelletier, 516 U.S. 299, 308 (1996)).  Therefore, DDA Dougherty will move for a stay of discovery following the mediation scheduled in this case, if the claims made against him in this lawsuit are not dismissed as a result of the mediation.

## IV.     CONCLUSION

For the foregoing reasons, DDA Dougherty respectfully requests that this Court grant his Motion to Dismiss, enter an order dismissing him as a defendant with prejudice, award him his attorney fees and costs, and order all other relief this Court deems just and proper.

WIGGINS, WILLIAMS & WIGGINS
A Professional Corporation

By */s/ Patricia G. Williams*
Patricia G. Williams
Attorneys for DDA Dougherty
1803 Rio Grande Blvd., N.W. (87104)
P.O. Box 1308
Albuquerque, New Mexico 87103-1308
(505) 764-8400

We hereby certify that a copy
of the foregoing was electronically
served to counsel of record through
 the CM/ECF system on this
11th day of December, 2013.

WIGGINS, WILLIAMS & WIGGINS, P.C.

By */s/ Patricia G. Williams*
     Patricia G. Williams